**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

DONNA M. JOHNSON,

        Plaintiff(s),
    v.                             DECISION AND ORDER
                                          08-CV-6258
UNITY HEALTH SYSTEM, ANDREA
MANCUSO, KEVIN M. McINTYRE, M.D.
and FRAN McCARTHY,

        Defendant(s).

## Preliminary Statement

Plaintiff Donna M. Johnson (hereinafter plaintiff or Johnson) brings this action against a private hospital and medical personnel who hospitalized her against her will for five days in December 2005. See Complaint (Docket # 1). Proceeding pursuant to 42 U.S.C. § 1983, plaintiff alleges both federal constitutional claims and pendent state claims. Currently pending before the Court are two motions: (1) defendants' motion to dismiss (Docket # 21) and (2) plaintiff's cross-motion to consolidate (Docket # 25).[1]

---

[1] On September 16, 2009, the Court heard oral argument from the parties on the pending motions. For the reasons set forth on the record during the September 16th hearing, the Court ordered that the defendants' motion for summary judgment seeking to dismiss plaintiff's pendent medical malpractice and negligence claims be denied without prejudice to renew. During the September 16, 2009 oral argument, plaintiff's counsel admitted that there was no good faith basis to assert a negligence claim against defendant McCarthy. Based on this statement, the Court orders that the negligence claim against defendant McCarthy is dismissed with prejudice.

**Relevant Facts**

<u>Johnson's Involuntary Commitment</u>: The following facts are as alleged in plaintiff's Complaint. On December 15, 2005, Johnson made an appointment at the Park Ridge Mental Health Outpatient Clinic.[2] Johnson alleges she was upset after seeing autopsy photographs of her mother and drove to the clinic to meet with a counselor before she went to work. Johnson met briefly with defendant Andrea Mancuso, a therapist at the outpatient clinic. Johnson alleges that Mancuso then spoke with defendant Fran McCarthy, another therapist at the clinic, who in turn spoke with Dr. Kevin M. McIntyre, a psychiatrist at the outpatient clinic. According to Johnson, Dr. McIntyre was told by McCarthy that plaintiff "was suicidal." Johnson claims that despite having never seen or evaluating her, Dr. McIntyre "authorized that Plaintiff be taken into custody and involuntarily transported to St. Mary's hospital for evaluation for admission pursuant to §9.45 of the Mental Hygiene Law of the State of New York." <u>See</u> Complaint (Docket # 1) at ¶ 16.

After the authorization was signed by Dr. McIntyre, plaintiff was handcuffed and transported to St. Mary's Hospital by police officers employed by the Town of Greece, New York. Plaintiff claims she was "admitted" to St. Mary's Hospital, but was soon

---

[2] The Park Ridge Mental Health Outpatient Clinic is operated by defendant Unity Health System.

2

transferred to Highland Hospital after she began experiencing chest pain and breathing difficulties. After brief "treatment" at Highland Hospital, plaintiff was returned to St. Mary's Hospital where she was "involuntarily detained for several days until her release" on December 20, 2005. Johnson alleges that she "did not have a mental illness for which immediate care and treatment was needed" and thus her involuntary confinement violated her Fourth Amendment right to be free from unreasonable seizure and her Fourteenth Amendment right "to not have her liberty taken without due process of law." In addition to her two federal causes of action, Johnson invoked pendant jurisdiction to allege medical malpractice and negligence claims under New York law.

<u>New York's Civil Commitment Framework</u>: At issue here are the emergency admission procedures under New York's Mental Hygiene Law ("MHL"). Section 9.45 of the MHL allows a county director of community services "or the director's designee" to direct law enforcement officers to take an individual into custody for emergency psychiatric treatment if a licenced psychologist, nurse, or certified social worker "responsible for providing treatment services to the person" reports to the director or the director's designee "that such person has a mental illness for which immediate care and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or herself or others." N.Y. Mental Hyg. Law § 9.45. In the present case, Dr. McIntyre was a

designee of the Monroe County Director of Community Services and hence had the statutory "power to direct the removal" of plaintiff to St. Mary's Hospital for further evaluation pursuant to § 9.39 of New York's Mental Hygiene Law. N.Y. Mental Hyg. Law § 9.45.

Once a person is taken into custody and transported to the hospital, the individual may be "retained" in the hospital pursuant to New York Mental Hygiene Law § 9.39. Section 9.39 provides that a patient may be involuntarily committed to a psychiatric hospital on an emergency basis for a period of up to fifteen days if the director of the hospital upon examination finds that she has a "mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to [her]self or others." A patient admitted pursuant to section 9.39 can only be retained for more than forty-eight hours if the director's finding "is confirmed after examination by another physician who shall be a member of the psychiatric staff of the hospital." N.Y. Mental Hyg. Law § 9.39.

In their motion to dismiss, the defendants argue that the defendants are private individuals and not "state actors" and therefore can not be sued for constitutional violations pursuant to § 1983. In her motion to consolidate, plaintiff asks the Court to consolidate the instant action with the case she filed against the Town of Greece, its police department and the officer who placed her in handcuffs when Johnson was taken into custody pursuant to

4

Dr. McIntyre's Mental Hygiene Law arrest authorization. See Johnson v. Town of Greece, *et al.*, Civil Docket #07-CV-6141 (W.D.N.Y.). Johnson argues that consolidation is appropriate because the two actions involve the same incident and will require overlapping evidence and witnesses.

**Discussion**

Standard for Rule 12(b)(6) Motion to Dismiss: Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") authorize the Court to dismiss a complaint if it fails to allege a claim for which relief may be granted. In deciding such a motion, "the Court must construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Rodenhouse v. Palmyra-Macedon Cent. Sch. Dist., No. 07-CV-6438 CJS, 2008 WL 2331314, at *2 (W.D.N.Y. June 3, 2008)(citation omitted). Such a motion "may not be granted so long as the complaint includes 'enough facts to state a claim to relief that is plausible on its face.'" Malay v. City of Syracuse, 638 F. Supp. 2d 303, 309 (N.D.N.Y. 2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). In order to sufficiently state a claim, the pleading

must contain enough factual allegations to give the defendant fair notice of what the claim is and the grounds upon which it rests, and cannot consist merely of bald assertions and conclusory allegations unsupported by factual assertions. See Nash v. McGinnis, 585 F. Supp. 2d 455, 458 (W.D.N.Y. 2008); Rodenhouse, 2008 WL 2331314, at *2 (citation omitted).

The Defendants as "State Actors": Defendants McIntyre, McCarthy and Mancuso are all private practice medical professionals. Unity Health Systems is a private health services provider. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 941 F.2d 1292, 1295-96 (2d Cir.1991)(citing Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)). Thus, to prevail on her constitutional[3] claims, Johnson must establish that she was injured by the defendants who were "state actors" when they sought to have Johnson involuntarily committed for emergency psychiatric care.

For purposes of imposing liability under § 1983, the conduct of private defendants can be attributed to the State when (1) the

---

[3] It is beyond cavil that involuntary "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425 (1979).

6

State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State. Sybalski v. Indep. Group Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008).

There is support in this Circuit for the proposition that private doctors and hospitals are not state actors for purposes of § 1983 liability for their role in the civil commitment scheme set forth in New York's Mental Hygiene Law. In Okunieff v. Rosenberg, 996 F. Supp. 343 (S.D.N.Y. 1998), aff'd, 166 F.3d 507 (2d Cir. 1999), the court determined that the conduct of private physicians in securing an involuntary psychiatric evaluation of an individual pursuant to New York's civil commitment scheme met none of the tests used to convert private conduct into state action for purposes of § 1983 liability. In Doe v. Harrison, 254 F. Supp. 2d 338 (S.D.N.Y. 2003), the court, utilizing the Okunieff analysis, determined that private physicians and hospitals do not become state actors because they have determined that an individual should be involuntarily hospitalized on an emergency basis pursuant to § 9.39 of New York's Mental Hygiene Law. Finally, in a summary opinion issued after the hearing in this case, the Second Circuit relied on Okunieff's state action analysis in holding that a private physician and a private hospital were not state actors when they involuntarily committed plaintiff to a psychiatric hospital

7

under New York's Mental Hygiene Law. <u>Hogan v. A.O. Fox Mem'l Hosp.</u>, 346 F. App'x 627 (2d Cir. 2009). I also agree with the <u>Okunieff</u> analysis and adopt it here in holding that defendants Mancuso, McCarthy and Unity Health Systems were not state actors for purposes of liability for constitutional violations asserted under § 1983. Accordingly, their motions to dismiss are granted.

Defendant McIntyre's state actor status is more problematic. Despite reliance on <u>Okunieff</u>'s "state actor" analysis, the Second Circuit in <u>Hogan</u> noted that a doctor who "is <u>both</u> a private physician <u>and</u> a medical designee of the county director of community services" presents a "much closer question whether [the doctor] is a state actor" as it was the doctor's status as a medical designee which allowed him to sign "the transport order requiring local law enforcement officers" to take the plaintiff into custody and transport her to the hospital for evaluation. <u>Hogan</u>, 346 F. App'x at 629. The defendant's status as a medical designee of a county director of community services was also relied upon by the court in <u>Rubenstein v. Benedictine Hosp.</u>, 790 F. Supp. 396, 406-07 (N.D.N.Y. 1992), in determining that the designee was a state actor for purposes of § 1983. The court in <u>Rubenstein</u> noted that by virtue of his designee status, the defendant doctor was entitled to "take into custody, detain, and transport a patient, after signing an application for the involuntary commitment, as well as direct peace officers and/or police officers

8

to take into custody and transport the patient." Rubenstein, 790 F. Supp. at 407 ("As a designee of a county official, [defendant doctor's] claim not to be a state actor is less convincing."); see also Hoffman v. County of Del., 41 F. Supp. 2d 195, 209 (N.D.N.Y. 1999)("§ 9.45 does not require a physical or mental examination <u>before</u> issuing a pick-up order. Of course, the director of community services or the director's designee may not haphazardly issue pick-up orders. Akin to the issuance of an arrest warrant, the Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others.")(internal quotation, citation and footnote omitted).

New York's Mental Hygiene Law recognizes a person's liberty interest: "No individual who is or appears to be mentally disabled shall be detained, deprived of his liberty, or otherwise confined *without lawful authority*." N.Y. Mental Hyg. Law § 31.19(a) (emphasis added). While not essential for their ultimate "state actor" holdings, of significance to the courts in both Hogan and Rubenstein was the ability of the designee to invoke the police power of the state and direct that an individual be involuntarily taken into custody, detained and transported to a psychiatric hospital for evaluation and possible civil commitment. Here, absent his designation by the county Director of Community Services, defendant McIntyre would not have been able to authorize

9

local police officers to take plaintiff into custody and transport her against her wishes to a psychiatric hospital for evaluation. Further, as the Complaint alleges, it was defendant McIntyre's power to issue the § 9.45 "pick up" or mental hygiene arrest order which authorized Town of Greece police officers to respond to the outpatient clinic, handcuff Johnson and forcibly remove her to St. Mary's Hospital. Not every private mental health professional physician in New York is a designee under § 9.45 and, once designated, Dr. McIntyre had powers and authority that differed from non-designated mental health professionals, including the right to demand the assistance of law enforcement to execute a forcible arrest of an individual.[4] Such delegated civil arrest authority is, in my view, sufficient to make defendant McIntyre a "state actor" for purposes of § 1983 liability.

Before moving on, it is important to note what the Court is not deciding. The issue of whether defendant McIntyre, as a state actor, did anything wrong (or even whether there is an issue of fact as to whether he did anything wrong) in having Johnson detained and removed to the hospital for evaluation is <u>not</u> being

---

[4] The Monroe County's Office of Mental Health has promulgated "Policy & Procedure for Appointment of Director of Community Service Designees." Section 3 of the Policy is entitled "Responsibilities of Appointees" and provides that "designees are responsible for knowing the pertinent sections of Mental Hygiene Law under which they are carrying out DCS designee responsibilities and are required to act in accordance with Mental Hygiene Law and all other relevant Laws and Regulations."

evaluated now.  Given the current posture of the case, the only determination presently being made herein is that defendant McIntyre's motion to dismiss the case against him on grounds that he can not be liable under § 1983 because he was not acting "under color of state law" is denied.

Plaintiff's Motion to Consolidate: With the instant motion to consolidate, plaintiff seeks to consolidate the instant action with Donna M. Johnson v. Town of Greece, *et al.*, 07-cv-6141, pursuant to FRCP Rule 42 on grounds that both cases arise out of plaintiff's mental hygiene arrest and involuntary admission under the Mental Hygiene Law and share common issues of fact and law. See Notice of Cross-Motion annexed to Docket # 25.  Pursuant to FRCP Rule 42(a)(2), where "actions before the court involve a common question of law or fact, the court may consolidate the actions."  Here, the actions involve common questions of law and fact, as they arise from the same alleged incidents, namely plaintiff's mental hygiene arrest and involuntary admission and detention pursuant to the Mental Hygiene Law.  In addition, during the September 16, 2009 hearing, defense counsel indicated that should the Court determine that any claims survive, she does not oppose plaintiff's motion to consolidate the surviving claims with the other action. Accordingly, plaintiff's motion to consolidate is **granted**.

## Conclusion

Defendants' motion to dismiss (Docket # 21) is **granted in part and denied in part**. Federal claims against defendants Unity Health Systems, Andrea Mancuso and Fran McCarthy are dismissed. Plaintiff's motion to consolidate (Docket # 25) is **granted**.

**SO ORDERED.**

/s/ Jonathan W. Feldman
Jonathan W. Feldman
United States Magistrate Judge

Dated: March 30, 2010
Rochester, New York